**COPY**                                         <span style="color:red">Exhibit A</span>

**BY FAX**

1  Alan Romero (SBN 249000)
   Robert S. Myong (SBN 262097)
2  ROMERO LAW, APC
3  80 S. Lake Avenue, Suite 880
   Pasadena, CA 91101-2672
4  Tel: 626.396.9900 / Fax: 626.396.9990
   Email: firm@romerolaw.com
5
   Annette Morasch (SBN 263797)
6  LAW OFFICE OF ANNETTE MORASCH, APC
   5701 W. Slauson Avenue, Suite 210
7  Culver City, CA 90230-3426
   Tel: 323.791.6276
8  Email: annette@amoraschlaw.com
9  Attorneys for Plaintiff
10 ELDONNA GILLESPIE

```
        F I L E D
    SUPERIOR COURT
COUNTY OF SAN BERNARDINO
 SAN BERNARDINO DISTRICT

    AUG 1 6 2021

BY _____
   SANDRA ORTEGA/DEPUTY
```

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12            **COUNTY OF SAN BERNARDINO - CIVIL DIVISION**

13 ELDONNA GILLESPIE, an individual;     Case No.: CIV SB 2 1 2 3 8 2 6
14
              Plaintiff,                 **UNLIMITED COMPLAINT FOR**
15                                        **DAMAGES**
     v.
16                                        **(1) FEHA GENDER DISCRIMINATION**
17 CENTERRA SERVICES                      **(2) FEHA DISABILITY**
   INTERNATIONAL, INC., a Delaware        **DISCRIMINATION**
18 corporation; CONSTELLIS               **(3) FEHA DISCRIMINATION:**
   INTEGRATED RISK MANAGEMENT             **FAILURE TO ENGAGE IN**
19 SERVICES, INC., a Delaware             **INTERACTIVE PROCESS**
20 corporation; PERATON, INC., a          **(4) FEHA FAILURE TO PROVIDE**
   Maryland corporation; VEANTEA          **REASONABLE ACCOMMODATION**
21 BURNSIDE, an individual; and DOES 1-   **(5) FEHA WORK ENVIRONMENT**
   99, inclusive;                         **HARASSMENT**
22                                        **(6) FEHA RETALIATION**
23            Defendants.                 **(7) FEHA FAILURE TO PREVENT**
                                          **DISCRIMINATION, HARASSMENT,**
24                                        **OR RETALIATION**
                                          **(8) VIOLATION OF CFRA**
25                                        **(9) LAB. CODE § 1102.5**
26                                        **RETALIATION**
27                                        **[JURY FEE DEPOSIT POSTED**
28                                        **CONCURRENTLY]**

                                    1
                 **UNLIMITED COMPLAINT FOR DAMAGES**

<span style="color:red">Exhibit A</span>

Exhibit A

**COMES NOW THE Plaintiff** ELDONNA GILLESPIE ("Plaintiff"), who heretofore alleges the following facts in support of their Unlimited Complaint for Damages and hereby respectfully demands a speedy jury trial on all causes of action stated herein as against Defendants CENTERRA SERVICES INTERNATIONAL, INC. ("CSI"), CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, INC., PERATON, INC., (the "Company Defendants") and VEANTEA BURNSIDE ("Burnside"), who along with DOES 1-99, inclusive, are referred to herein as the "Defendants".

<u>**CASE SYNOPSIS**</u>

1.     Plaintiff was employed as a Supervisor and Security Captain on behalf of the Company Defendants at Fort Irwin National Training Center.  Plaintiff was required to be armed while on duty and to wear a ballistic vest.

2.     All Defendants, including individual Veantea Burnside, refused to provide Plaintiff with a female ballistic vest which provides space for female breasts, even though such vests are readily and commercially available.  Instead, Plaintiff and similarly situated females were forced to wear ill-fitting ballistic vests which would, and did, injure the soft tissues of the female breast.

3.     Further, after suffering occupational injuries, Defendants refused to engage in an interactive process with Plaintiff and failed to make reasonable accommodations necessary for her to return to work on limited duty.

<u>**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**</u>

<u>**Jurisdiction and Venue**</u>

4.     This Court has jurisdiction of the subject matter of Plaintiff's claims. Jurisdiction is proper in this Court because the damages and claims alleged and demanded herein by Plaintiff exceeds <u>$25,000</u>, and Plaintiff herein does make a demand and prayer for damages, in excess, of the jurisdictional limit of this Court.

5.     This Court has personal jurisdiction over Defendant CENTERRA SERVICES INTERNATIONAL, INC. in that it was, at all relevant periods of time covered by this complaint, a Delaware corporation, maintaining a place of business in the County of San Bernardino.

6.     This    Court    has    personal    jurisdiction    over    Defendant    CONSTELLIS

2

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

INTEGRATED RISK MANAGEMENT SERVICES, INC. in that it was, at all relevant periods of time covered by this complaint, a Delaware corporation, maintaining a place of business in the County of San Bernardino.

7.     This Court has personal jurisdiction over Defendant PERATON, INC. in that it was, at all relevant periods of time covered by this complaint, a Maryland corporation, maintaining a place of business in the County of San Bernardino.

8.     This Court has personal jurisdiction over Defendant Burnside in that he was, at all relevant periods of time covered by this complaint, a resident of the County of San Bernardino.

9.     Venue in this Court is proper in that, upon information and belief, Defendants reside in the County of San Bernardino.

10.     All the harm suffered by Plaintiff took place within this judicial district.

**The Plaintiff**

11.     Plaintiff was, at all relevant periods of time covered by this complaint, employed at the Fort Irwin National Training Center located in the City of Barstow, County of San Bernardino.

**The Defendants**

12.     Defendant CENTERRA SERVICES INTERNATIONAL, INC. ("CSI") is a Delaware corporation which maintains a place of business, where it injured Plaintiff, at Fort Irwin National Training Center in the County of San Bernardino. CSI has more than five employees.

13.     Defendant CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, INC. ("CONSTELLIS") is a Delaware corporation which maintains a place of business, where it injured Plaintiff, at Fort Irwin National Training Center in the County of San Bernardino. CONSTELLIS has more than five employees.

14.     Defendant PERATON INC. is a Maryland corporation which maintains a place of business, where it injured Plaintiff, at Fort Irwin National Training Center in the County of San Bernardino. PERATON has more than five employees.

15.     Defendant Burnside is an individual who, upon information and belief, maintains his principal residence in the City of Apple Valley in the County of San Bernardino.

**UNLIMITED COMPLAINT FOR DAMAGES**

### Relationship Between the Defendants

16.     Plaintiff is informed and believes, and thereupon alleges, that Defendants, and each of them, were at all times mentioned herein the agents, servants, and employees of each other, or otherwise were acting with the full knowledge and consent of each other.   Plaintiff is further informed and believes, and upon such basis and belief alleges, that in doing all the things alleged in this complaint, Defendants, and each of them, were joint employers, and/or acting within the scope and authority of their agency, servitude, or employment, and were acting with the express and/or implied knowledge, permission, and consent of one another. Plaintiff is further informed and believes, and upon such basis and belief alleges, that Defendants learned of, ratified, and/or approved the wrongful conduct of its agents and/or employees identified in this Complaint as having engaged in wrongful conduct.

17.     Plaintiff is informed and believes, and thereupon alleges, that at all relevant times, Defendants, and each of them, were business entities or individuals who owned, controlled, or managed the business which has damaged Plaintiff, and are each therefore jointly, severally, and individually liable to Plaintiff.

18.     Plaintiff is informed and believes, and thereupon alleges, that at all relevant times, Defendants, and each of them, were in some fashion, by contract or otherwise, the successor, assignor, indemnitor, guarantor, or third-party beneficiary of one or more of the remaining Defendants, and at all relevant times to Plaintiff's claims alleged herein, were acting within that capacity. Plaintiff further alleges that Defendants, and each of them, assumed the liabilities of the other Defendants, by virtue of the fact that each to some degree, wrongfully received and/or wrongfully benefited from the flow of assets from the other Defendants to the detriment of Plaintiff. Plaintiff further alleges that by wrongfully receiving and/or benefiting from Defendants' assets, and in the consummation of such transactions, a *de facto* merger of the Defendants, and each of them, resulted, such that Defendants, and each of them, may be treated as one for purposes of this Complaint.

19.     Plaintiff is informed and believes, and thereupon alleges, that at all relevant times mentioned herein, Defendants, and each of them, were the partners, agents, servants, employees,

**4**

### UNLIMITED COMPLAINT FOR DAMAGES

Exhibit A

joint venturers, or co-conspirators of each other defendant, and that each defendant was acting within the course, scope, and authority of such partnership, agency, employment, joint venture, or conspiracy, and that each defendant, directly or indirectly, authorized, ratified, and approved the acts of the remaining Defendants, and each of them.

**Factual Allegations**

20.     Plaintiff was employed as an armed security guard for Defendant CSI at Fort Irwin since October 1, 2015. Plaintiff was trained and certified as a sworn officer for NASA. Plaintiff has been a California licensed security guard since 2003. During her employment she was considered Federal Aeronautic Security Police Officer.

21.     At all times relevant to this complaint, Plaintiff worked at the Goldstone Site operated by private NASA contractors, Exelis, Harris Corporation, and then finally a company Plaintiff knew as "Peraton."

22.     Throughout her employment with the Company Defendants, the Company Defendants treated Plaintiff and her female co-workers differently, and less favorably as the male employees as will be discussed further below.   Upon information and belief, the Company Defendants actions and failure to take preventative and required actions, created a hostile environment for female employees.

23.     As Plaintiff was an armed security guard at a national security site on an active military base, she was required to be armed at all times and to wear a "Level III" rated ballistic vest to protect her from gunfire.

24.     The ballistic vest issued by CSI to Plaintiff was expired, as the Kevlar inside the vest had an expiration date that had long passed.   Although ballistic vests are made to accommodate females' breasts, the vests provided by CSI to Plaintiff and other similarly-situated female armed security guards were of the male configuration. CSI issued a male security guard a female ballistic vest with a bullet hole in it.  Range Master Ben Palmer at JPL who did Plaintiff's gun qualification knew that women were not provided with properly fitted vests. While Mr. Palmer loaned a proper vest to a male employee (because the vest had a bullet hole in it), upon information and belief Mr. Palmer either did nothing with that information, or Mr. Palmer reported the

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

1   situation, and nothing was done in response. Either way, Defendant did not provide the female

2   guards, including Plaintiff, with properly fitted vests.

3       25.    In 2015, Plaintiff and two other female security guards began to complain about

4   pain and discomfort in their breasts resulting from being forced to wear male ballistic vests that

5   had no room for female breasts.  These complaints were made to site, male supervisor Defendant

6   Veantea Burnside.  The Company Defendants deployed a representative to the site to take photos

7   of a female employee with her male ballistic vest.

8       26.    As of 2015, security guards were required to report to, and leave, work in civilian

9   attire only. Only a single locker room was provided by Defendants, so female and male employees

10  were expected to use that one locker room. Female employees, including Plaintiff, complained of

11  being uncomfortable using the co-ed locker room. Female employees would use the bathroom to

12  change their pants. Sometime in March 2017, Defendants provided separate locker rooms for men

13  and women. After separate locker rooms were provided, Defendant Burnside informed the female

14  employees that yoga pants or similar clothing was inappropriate to wear on the way off shift.

15  Defendant Burnside would follow female officers, including Plaintiff, to see what their attire was

16  and confront the female officers if they were wearing yoga pants or other supposedly

17  "inappropriate" attire. Upon information and belief, no male employees were told what clothes

18  they could wear off duty. Female employees, including Plaintiff, noticed that the women's locker

19  room did not have a locking door, and that there was a gap between the door and door frame. The

20  female employees witnessed Defendant Burnside standing outside the door when they were inside

21  the locker room. The female employees complained to the Company Defendants.

22      27.    Eventually, the male vests issued to the female guards were recalled by CSI.

23  Female officers, including Plaintiff, requested to purchase their own fitted ballistic vests.

24  Defendants told the female officers "no." Defendant Burnside told the female staff that Defendants

25  didn't want to buy vests because if the female officer left Peraton, the vest would only be fitted to

26  the individual female. Burnside said fitted vests for women would be a waste of money.

27      28.    In 2016, used vests were distributed to the female guards, but the vests' efficacy

28  had already expired. Defendants referred to the vests as "universal."  However, the vests were,

6

**UNLIMITED COMPLAINT FOR DAMAGES**

1   again, all male vests and unsuitable for the female body. Defendants informed the female

2   employees that the ballistic vests were "unisex" or words to that effect. Burnside told Plaintiff that

3   he could not order her a female ballistic vest because she was "too top heavy." All females who

4   tried the new vests agreed that the male vests did not fit around their breasts. Female guards were

5   forced to use these new, male vests which caused them significant pain and discomfort. The female

6   guards would have to constantly reach into their vests to pull the Kevlar away from their breasts

7   to help alleviate the pain and discomfort caused by wearing the men's ballistic vests.

8        29.    Plaintiff and the other similarly situated female armed guards made regular

9   complaints to Defendants both verbally and in writing. Supervisor Burnside gave the female

10  guards what be purported to be a solution: a suggestion to take the vests home, fold the vests, and

11  put them under a mattress in order to create a crease to supposedly create enough space for female

12  breasts not to be compressed. Plaintiff followed this suggestion, but this did not work or help

13  alleviate the pain.

14       30.    On March 28, 2017 a female officer met with what Plaintiff believes is a Vice

15  President of Constellis at the Holiday Inn Express & Suites, in connection with the female officer

16  complaints of Burnside's harassment and discrimination by Defendant Burnside.

17       31.    In or around July 2017, a female employee complained to Defendant Burnside and

18  Robert Handel, a Human Resources Manager (and later Senior Human Resources Manager) for

19  Defendants CENTERRA and CONSTELLIS, about Defendant Burnside harassing her and

20  physically pushing female employees. The female employee further reported a male Sergeant

21  named Cole harassing and frightening her in a remote location on Fort Irwin. In response,

22  Defendant Burnside placed this female employee on involuntary leave due to her supposed

23  "emotional state," and Handel demanded this female employee take a fitness for duty examination

24  prior to returning to work. Handel told this female employee, "[t]he fitness for duty assessment

25  stems from your strong emotional reaction to" the events the female employee reported, which

26  were sexual harassment, violence, and threats.

27       32.    In February 2018, Plaintiff was promoted to Captain and given supervisory

28  responsibilities.

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

Exhibit A

33.     In February 2018 a female job applicant called Plaintiff and reported Defendant Burnside for sexual harassment and reported that Defendant Burnside had made a *quid pro quo* offer to give her a job if she met him in a hotel. Plaintiff reported this job applicant's phone call to Rob Handel, the Human Resources employee for Defendants CENTERRA and CONSTELLIS.

34.     In April 2018, Plaintiff was on and off of light duty due to an occupational knee injury.

35.     CSI represented to Plaintiff that it would not buy female vests. Carmen Cortinas, the security administrator for Peraton, was aware of the ongoing injuries to Plaintiff and the other similarly-situated females caused by the failure of Defendants to provide female ballistic vests. Plaintiff repeatedly reported the pain she was suffering to Carmen Cortinas. Cortinas suggested wearing a larger size in men's, but Plaintiff informed Cortinas that would not help because the vest would pinch her neck, and prevent her from wearing a seat belt, and would cause other safety/health issues. When Plaintiff became Captain, Plaintiff would bring up the ballistic vest issues on almost a weekly basis with Cortinas at weekly meetings. These meetings also included a woman who Plaintiff believes is named Ms. Heidi Lynn Vanmetre, an employee of Peraton. Cortinas took no actions to address the female employees' pain and suffering. However, Cortinas said words to the effect of, "We're not required to issue you a female vest. They're universal vests." And, "NASA regulations don't require that we give you female vests, just that they be ballistic vests."

36.     In April 2019, Plaintiff presented Defendants with a certification by her physician that Plaintiff needed to wear a female ballistic vest due to Plaintiff having developed painful, fluid-filled cysts in both breasts. Plaintiff also experienced pain in her neck, rib cage and back due to the improper vest. Plaintiff transmitted this medical certification to CSI CEO Kristian Kluzinski, but Kluzinski did not respond despite Plaintiff following-up several times. Plaintiff then followed-up with Human Resources supervisor Robert Handel. Handel informed Plaintiff that he had been trying to reach Kluzinski about this issue, but had been similarly unsuccessful.

37.     During this time, due to Defendants' failure to accommodate, Plaintiff was injured by Defendants, with painful cysts having been occupationally-caused in both breasts.

**8**

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

38.     On <u>August 23, 2019</u>, Plaintiff took time off from work due to a cumulative back injury.  On or about this time, CEO Kluzinski relented and agreed to purchase female vests for Plaintiff and her female coworkers. However, upon information and belief, Kluzinski first contacted other work sites for used female vests, but was unable to find any.

39.     In <u>September 2019</u>, Plaintiff was instructed to meet with a vendor to be sized for a female vest: Greg McClung of Proforce Law Enforcement. Carmen Cortinas refused to clear the vendor to come onsite to Fort Irwin, so Plaintiff and other female employees were required to meet the vendor at a museum (the Harvey House) to be sized-meaning to have her breasts measured in public. Responding to an inquiry by Plaintiff, McClung denied that any ballistic vests were "universal" or "unisex," as Defendants had represented to Plaintiff and the other female armed guards.

40.     In November 2019, Plaintiff's medical provider provided Handel with an off-work note from November 5, 2019 to November 26, 2019 due to injuries sustained by the vest. However, Constellis used Plaintiff's knee injury as a reason Plaintiff was off-work. The company Defendant informed Plaintiff that if she was unable to return to work without restrictions by January 6, 2020, she would be terminated.

41.     On or around January 15, 2020, the Company Defendants involuntarily terminated the Plaintiff's employment.

42.     In <u>May 2020</u>, Defendants finally issued female ballistic vests, after nearly five years of continuous complaining by Plaintiff and the other female guards at the site.

43.     During the preceding five years, Plaintiff, as well as other similarly-situated female armed guards were forced to endure severe, unrelenting pain while wearing the mandatory male vests while on-duty. At no point in Plaintiff's employment with Company Defendants did she have the opportunity to wear a ballistic vest made for women.

44.     The use of the male vests by Plaintiff resulted in lasting injuries to her neck, back, and breasts that would not have occurred but for Defendants knowing failure and refusal to provide a female ballistic vest to Plaintiff.

**UNLIMITED COMPLAINT FOR DAMAGES**

45.     Plaintiff is a grandmother who helps support her entire family, and was forced to endure the pain because she had recently bought a house close to the work site, and could not financially withstand the potential loss of her employment.

46.     On or about this time, CSI conducted an internal inquiry based upon complaints that Defendant Burnside had been sexually harassing two of his female subordinates.  Upon information and belief, the Company Defendants, in bad faith and without making a proper investigation, concluded the women's' complaints were unfounded. Yet, upon information and belief, the Company Defendants later terminated Burnside.

47.     On or about <u>August 23, 2019,</u> Plaintiff had to take time off from work due to the occupational injuries caused by Defendants.  Plaintiff provided this medical certification to the Company Defendants with this medical certification containing requests for reasonable accommodations to permit Plaintiff to return to work and perform her essential job functions. These reasonable accommodations requested by Plaintiff and her physician were to temporarily avoid bending, lifting more than 10 pounds, kneeling, squatting, or excessive standing.

48.     Plaintiff sought to return to work with reasonable accommodations whose necessity was attested to by her physician.

49.     Without engaging in any timely, good faith interactive process, the Company Defendants refused to provide any of these reasonable accommodations to Plaintiff based upon her physician's advice, and instead terminated Plaintiff on <u>January 6, 2020</u> for purported job abandonment.

50.     Plaintiff did not abandon her job, rather, she had provided her employer with a list of reasonable accommodations that she would need in order to return to work on light duty. Instead, CSI terminated Plaintiff based upon wrongful animus in violation of California law.

### **Exhaustion of Administrative Remedies**

51.     A Right-to-Sue Letter was timely obtained from the Department of Fair Employment and Housing on <u>July 12, 2021</u> on behalf of Plaintiff. A true and correct copy of this Right-to-Sue Letter is heretofore attached as **"EXHIBIT 1"**.

**UNLIMITED COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

### FEHA GENDER DISCRIMINATION

### Gov. Code § 12940(a)

### (Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)

52.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

53.     These Defendants were an employer.

54.     Plaintiff was an employee of these Defendants.

55.     These Defendants subjected Plaintiff to one or more of the following adverse employment actions: (1) asked impermissible non-job-related questions; (2) demoted; (3) denied any employment benefit or privilege; (4) denied family care or medical leave (CFRA) (employers of 5 or more people); (5) denied hire or promotion; (6) denied or forced to transfer; (7) denied reasonable accommodation for a disability; (8) denied work opportunities or assignments; (9) forced to quit; (10) laid off; (11) reprimanded; (12) suspended; (13) terminated.

56.     One or more of the following protected statuses was a substantial motivating reason for these Defendants to have subjected Plaintiff to the adverse employment actions described herein: (1) association with a member of a protected class; (2) disability (physical or mental); (3) family care or medical leave (CFRA) (employers of 5 or more people); (4) medical condition (cancer or genetic characteristic); (5) sex/gender; (6) sexual harassment (hostile environment).

57.     Plaintiff was harmed.

58.     These Defendants' conduct was a substantial factor in causing Plaintiff's harm.

59.     In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

1 | of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and
2 | legal rights, and were authorized or approved by Defendants, justifying an award of exemplary
3 | and punitive damages in an amount according to proof, in order to deter these Defendants from
4 | similar conduct in the future, should be made.

5 | ## SECOND CAUSE OF ACTION

6 | ## FEHA DISCRIMINATION: DISABILITY DISCRIMINATION

7 | ### Gov. Code § 12940(a)

8 | ### (Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED
9 | ### RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)

10 | 60.     Plaintiff realleges, and incorporates herein by their reference, each and every
11 | allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.
12 | Further, all allegations set forth in this cause of action are pled upon information and belief, unless
13 | otherwise stated.

14 | 61.     These Defendants were employers.

15 | 62.     Plaintiff was an employee of these Defendants.

16 | 63.     These Defendants knew that Plaintiff had a physical condition that limited a major
17 | life activity.

18 | 64.     Plaintiff was able to perform the essential job duties of her current position, either
19 | with or without reasonable accommodation for her condition.

20 | 65.     These Defendants subjected Plaintiff to one or more of the following adverse
21 | employment actions: (1) asked impermissible non-job-related questions; (2) demoted; (3) denied
22 | any employment benefit or privilege; (4) denied family care or medical leave (CFRA) (employers
23 | of 5 or more people); (5) denied hire or promotion; (6) denied or forced to transfer; (7) denied
24 | reasonable accommodation for a disability; (8) denied work opportunities or assignments; (9)
25 | forced to quit; (10) laid off; (11) reprimanded; (12) suspended; (13) terminated.

26 | 66.     Plaintiff's physical condition was a substantial motivating reason for these
27 | Defendants' decision to subject Plaintiff to the adverse employment actions described herein.

28 | 67.     Plaintiff was harmed.

12

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

68.     These Defendants' conduct was a substantial factor in causing Plaintiff's harm.

69.     In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter these Defendants from similar conduct in the future, should be made.

## THIRD CAUSE OF ACTION

### FEHA DISCRIMINATION: FAILURE TO ENGAGE IN INTERACTIVE PROCESS

### Gov. Code § 12940(n)

### (Against CENTERRA SERVICES INTERNATIONAL, INC., CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, INC., PERATON, INC. DOES 1-99)

70.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

71.     These Defendants were an employer.

72.     Plaintiff was an employee of these Defendants.

73.     Plaintiff had a physical condition that was known to these Defendants.

74.     Plaintiff requested that these Defendants make reasonable accommodation for her physical condition so that she would be able to perform the essential job requirements.

75.     Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements.

76.     These Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made.

UNLIMITED COMPLAINT FOR DAMAGES

77.   Plaintiff was harmed.

78.   These Defendants' failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

79.   In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter these Defendants from similar conduct in the future, should be made.

## FOURTH CAUSE OF ACTION

### FEHA FAILURE TO PROVIDE REASONABLE ACCOMMODATION

### Gov. Code §12940 (m)

### (Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)

80.   Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

81.   At all times relevant herein, employers have been prohibited from failing to make reasonable accommodation for the known physical disability of an employee.

82.   Upon information and belief, it would not have caused an undue burden upon the Company Defendants to provide Plaintiff with disability-related accommodation.

83.   Plaintiff has been harmed by the Company Defendants' failure to make reasonable accommodation.

84.   In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code

14

**UNLIMITED COMPLAINT FOR DAMAGES**

1  §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or

2  constituted despicable conduct carried on by these Defendants with willful and conscious

3  disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of

4  property and legal rights, and were authorized or approved by Defendants, justifying an award of

5  exemplary and punitive damages in an amount according to proof, in order to deter these

6  Defendants from similar conduct in the future, should be made.

7  **FIFTH CAUSE OF ACTION**

8  **FEHA WORK ENVIRONMENT HARASSMENT**

9  **Gov. Code §§ 12923 & 12940(j)**

10  **(Against All Defendants)**

11  85.    Plaintiff realleges, and incorporates herein by their reference, each and every

12  allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

13  Further, all allegations set forth in this cause of action are pled upon information and belief, unless

14  otherwise stated.

15  86.    Plaintiff was an employee of the Company Defendants, and Plaintiff was a

16  subordinate of Defendant Burnside.

17  87.    Plaintiff was subjected to harassing conduct based upon one or more of the

18  following protected statuses applicable to Plaintiff: (1) physical disability; (2) family care or

19  medical leave (CFRA); (3) sex/gender; (4) sexual harassment (hostile environment).

20  88.    The harassing conduct was severe and/or pervasive.

21  89.    A reasonable person in Plaintiff's circumstances, with Plaintiff's same protected

22  characteristics, would have considered the work environment to be hostile, intimidating, offensive,

23  oppressive, or abusive.

24  90.    Plaintiff considered the work environment to be hostile, intimidating, offensive,

25  oppressive, or abusive.

26  91.    A supervisor engaged in the conduct, and/or Defendants, supervisors or agents

27  knew or should have known of the conduct and failed to take immediate and appropriate corrective

28  action.

**UNLIMITED COMPLAINT FOR DAMAGES**

92.   Plaintiff was harmed.

93.   The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

94.   In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter these Defendants from similar conduct in the future, should be made.

**SIXTH CAUSE OF ACTION**

**FEHA RETALIATION**

**Gov. Code § 12940(h)**

**(Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED**

**RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)**

95.   Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

96.   Plaintiff engaged in one or more of the following protected activities: (1) participated as a witness in a discrimination or harassment complaint; (2) reported or resisted any form of discrimination or harassment; (3) requested or used a disability-related accommodation; (4) requested or used leave under the California Family Rights Act or FMLA.

97.   These Defendants subjected Plaintiff to one or more of the following adverse employment actions: (1) asked impermissible non-job-related questions; (2) demoted; (3) denied any employment benefit or privilege; (4) denied family care or medical leave (CFRA); (5) denied hire or promotion; (6) denied or forced to transfer; (7) denied reasonable accommodation for a

16

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

1  disability; (8) denied work opportunities or assignments; (9) forced to quit; (10) laid off; (11)

2  reprimanded; (12) suspended; (13) terminated.

3       98.   Plaintiff's aforementioned protected activities were a substantial motivating reason

4  for these Defendants' decision to subject Plaintiff to one or more of the aforementioned adverse

5  employment actions.

6       99.   Plaintiff was harmed.

7       100.   These Defendants' decision to subject Plaintiff to one or more of the

8  aforementioned adverse employment actions was a substantial factor in causing Plaintiff's harm.

9       101.   In doing the things herein alleged, the acts and conduct of these Defendants

10  constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code

11  §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or

12  constituted despicable conduct carried on by these Defendants with willful and conscious disregard

13  of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and

14  legal rights, and were authorized or approved by Defendants, justifying an award of exemplary

15  and punitive damages in an amount according to proof, in order to deter these Defendants from

16  similar conduct in the future, should be made.

17  **SEVENTH CAUSE OF ACTION**

18  **FEHA FAILURE TO PREVENT DISCRIMINATION,**

19  **HARASSMENT, OR RETALIATION**

20  **Gov. Code § 12940(k)**

21  **(Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED**

22  **RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)**

23       102.   Plaintiff realleges, and incorporates herein by their reference, each and every

24  allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

25  Further, all allegations set forth in this cause of action are pled upon information and belief, unless

26  otherwise stated.

27       103.   Plaintiff was an employee of these Defendants.

28

17

**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

104.    Plaintiff was subjected to harassment, discrimination, or retaliation in the course of employment.

105.    These Defendants failed to take all reasonable steps to prevent the harassment, discrimination, or retaliation.

106.    Plaintiff was harmed.

107.    These Defendants' failure to take all reasonable steps to prevents harassment, discrimination, or retaliation was a substantial factor in causing Plaintiff's harm.

108.    In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter these Defendants from similar conduct in the future, should be made.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT

### Gov. Code § 12945.1

### (Against CENTERRA SERVICES INTERNATIONAL, CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, PERATON, and DOES 1-99)

109.    Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

110.    Plaintiff was eligible for medical leave.

111.    Pled in the alternative, Plaintiff requested or took leave for Plaintiff's own serious health condition that made her temporarily unable to perform the functions of her job with these Defendants.

**UNLIMITED COMPLAINT FOR DAMAGES**

112.    Plaintiff provided reasonable notice of these Defendants of her need for medical leave, including its expected timing and length.

113.    These Defendants refused to grant Plaintiff's request for medical leave and/or refused to return Plaintiff to the same or comparable job when her medical leave ended.

114.    Plaintiff was harmed.

115.    Defendants' decision or conduct was a substantial factor in causing Plaintiff's harm.

116.    In doing the things herein alleged, the acts and conduct of these Defendants constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by these Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter these Defendants from similar conduct in the future, should be made.

## NINTH CAUSE OF ACTION

### RETALIATION

### Lab. Code § 1102.5

### (Against All Defendants)

117.    Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein. Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

118.    The Company Defendants were Plaintiff's employer, and Defendant Burnside was an individual acting on behalf of the Company Defendants.

119.    Plaintiff disclosed to a person with authority over Plaintiff, or an employee with authority to investigate, discover, or correct legal violations, of one or more of the following: (1)

**19**

**UNLIMITED COMPLAINT FOR DAMAGES**

1  Gov. Code §§ 12900-12996; (2) Lab. Code § 6306; (3) Lab. Code § 6308; (4) Lab. Code § 6310;
2  (5) Lab. Code § 6400; (6) Lab. Code §§ 6400-6406.

3      120.   Plaintiff had reasonable cause to believe that the information disclosed amounted
4  to a violation of state or federal law.

5      121.   Defendants subjected Plaintiff to one or more of the following adverse employment
6  actions: (1) asked impermissible non-job-related questions; (2) demoted; (3) denied any
7  employment benefit or privilege; (4) denied family care or medical leave (CFRA) (employers of
8  5 or more people); (5) denied hire or promotion; (6) denied or forced to transfer; (7) denied
9  reasonable accommodation for a disability; (8) denied work opportunities or assignments; (9)
10 forced to quit; (10) laid off; (11) reprimanded; (12) suspended; (13) terminated.

11     122.   Plaintiff's disclosure of information was a contributing factor in Defendants'
12 decision to subject Plaintiff to one or more of the aforementioned adverse employment actions.

13     123.   Plaintiff was harmed.

14     124.   Defendants' conduct was a substantial factor in causing Plaintiff's harm.

15     125.   In doing the things herein alleged, the acts and conduct of these Defendants
16 constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code
17 §3294(c)), in that these acts were intended by these Defendants to cause injury to Plaintiff and/or
18 constituted despicable conduct carried on by these Defendants with willful and conscious disregard
19 of the rights of Plaintiff, with the intention of these Defendants to deprive Plaintiff of property and
20 legal rights, and were authorized or approved by Defendants, justifying an award of exemplary
21 and punitive damages in an amount according to proof, in order to deter these Defendants from
22 similar conduct in the future, should be made.
23 //
24 //
25 //
26 //
27 //
28 //

**20**
**UNLIMITED COMPLAINT FOR DAMAGES**

Exhibit A

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as against Defendants as follows, for:

1)      Compensatory damages in an amount according to proof at time of trial.

2)      Attorney's fees and costs pursuant to all applicable statutes or legal principles, including, but not limited to, the Fair Employment and Housing Act, Lab. Code § 1102.5, and/or Civ. Code 1021.5.

3)      Civil penalties as permitted by statute.

4)      Costs of suit incurred.

5)      Prejudgment interest on all amounts claimed as permitted by law.

6)      Punitive or exemplary damages pursuant to Civ. Code § 3294, Gov't Code §12940 et seq., and all other statutory authority as permitted by law.

7)      Prejudgment interest on all amounts claimed pursuant to Civ. Code §§ 3287 and/or 3288.

8)      Such other and further relief as the Court may deem proper.

                                      ROMERO LAW, APC


Dated:  August 13, 2021                    _____/s/_____
                                           Alan Romero (SBN 249000)
                                           Robert S. Myong (SBN 262097)
                                           Attorneys for Plaintiff
                                           ELDONNA GILLESPIE


                                      LAW OFC OF ANNETTE MORASCH


Dated:  August 13, 2021                    _____/s/_____
                                           Annette Morasch (SBN 263797)
                                           Attorney for Plaintiff
                                           ELDONNA GILLESPIE

UNLIMITED COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes demand for Jury Trial, and has concurrently posted the jury fee deposit.

ROMERO LAW, APC

Dated:  August 13, 2021                    _____/s/_____
                                           Alan Romero (SBN 249000)
                                           Robert S. Myong (SBN 262097)
                                           Attorneys for Plaintiff
                                           ELDONNA GILLESPIE

LAW OFC OF ANNETTE MORASCH

Dated:  August 13, 2021                    _____/s/_____
                                           Annette Morasch (SBN 263797)
                                           Attorney for Plaintiff
                                           ELDONNA GILLESPIE

UNLIMITED COMPLAINT FOR DAMAGES

Exhibit A

**EXHIBIT 1**

Exhibit A





STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

July 12, 2021

Alan Romero
80 S. Lake Avenue, Suite 880
Pasadena, CA 91101

RE:   **Notice to Complainant's Attorney**
      DFEH Matter Number: 202107-14143912
      Right to Sue: Gillespie / Centerra, Inc. et al.

Dear Alan Romero:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                   GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

July 12, 2021

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202107-14143912
      Right to Sue: Gillespie / Centerra, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                          GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

July 12, 2021

Eldonna Gillespie
80 S. Lake Avenue, Suite 880
Pasadena, California 91101

RE:   **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202107-14143912
       Right to Sue: Gillespie / Centerra, Inc. et al.

Dear Eldonna Gillespie:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective July 12, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



Exhibit A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

Exhibit A

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Eldonna Gillespie                                                        DFEH No. 202107-14143912

                             **Complainant,**

vs.

Centerra, Inc.
7121 Fairway Drive, Suite 301
Palm Beach Gardens, Florida 33418

Veantea Burnside
10804 Aster Lane
Apple Valley, California 92308

Peraton
12975 Worldgate Drive
Herndon, Virginia 20170

Constellis Integrated Risk Management Services, Inc.
13530 Dulles Technology Drive
Herndon, Virginia 20171

Carmen Cortinas
,

Kristian Kluzinski
,

                             **Respondents**

_____

**1.** Respondent **Centerra, Inc.** is an **employer Centerra, Inc.** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Veantea Burnside** individual as Co-Respondent(s).
Complainant is naming **Peraton** business as Co-Respondent(s).
Complainant is naming **Constellis Integrated Risk Management Services, Inc.** business as Co-Respondent(s).
Complainant is naming **Carmen Cortinas** individual as Co-Respondent(s).

-1-

*Complaint – DFEH No. 202107-14143912*

Date Filed: July 12, 2021

1  Complainant is naming **Kristian Kluzinski** individual as Co-Respondent(s).

2  **3**. Complainant **Eldonna Gillespie**, resides in the City of **Pasadena**, State of **California**.

3

4  **4**. Complainant alleges that on or about **January 6, 2020**, respondent took the following adverse actions:

5
   **Complainant was harassed** because of complainant's sex/gender, disability (physical or
6  mental), medical condition (cancer or genetic characteristic), sexual harassment- hostile
   environment, association with a member of a protected class, family care or medical leave
7  (cfra).

8  **Complainant was discriminated against** because of complainant's sex/gender, disability
   (physical or mental), medical condition (cancer or genetic characteristic), sexual
9  harassment- hostile environment, association with a member of a protected class, family
   care or medical leave (cfra) and as a result of the discrimination was terminated, laid off,
10 forced to quit, denied hire or promotion, reprimanded, suspended, demoted, asked
   impermissible non-job-related questions, denied any employment benefit or privilege, denied
11 reasonable accommodation for a disability, denied work opportunities or assignments,
   denied or forced to transfer, denied family care or medical leave (cfra).
12
   **Complainant experienced retaliation** because complainant reported or resisted any form
13 of discrimination or harassment, requested or used a disability-related accommodation,
   participated as a witness in a discrimination or harassment complaint, requested or used
14 family care or medical leave (cfra) and as a result was terminated, laid off, forced to quit,
   denied hire or promotion, reprimanded, suspended, demoted, asked impermissible non-job-
15 related questions, denied any employment benefit or privilege, denied reasonable
   accommodation for a disability, denied work opportunities or assignments, denied or forced
16 to transfer, denied family care or medical leave (cfra).

17

18 **Additional Complaint Details:** 1.    Plaintiff has been employed as an armed security
   guard for Defendant CSI at Fort Irwin since October 1, 2015.  Plaintiff has been a California
19 licensed security guard since 2003.
   2.       At all times relevant to this complaint, Plaintiff worked at the Goldstone Site operated
20 by a private NASA contractor known as Peraton.
   3.       As Plaintiff was an armed security guard at a national security site on an active
21 military base, she was required to be armed at all times and to wear a "Level III" rated
   ballistic vest to protect her from gunfire.
22 4.       The ballistic vest issued by CSI to Plaintiff was expired, as the Kevlar inside the vest
   had an expiration date that had long passed.  Another security guard was issued a ballistic
23 vest with a bullet hole in it, which rendered the Kevlar inside the vest unsafe for continued
   use.  Although ballistic vests are made to accommodate females' breasts, the vests
24 provided by CSI to Plaintiff and other similarly-situated female armed security guards were
   of the male configuration.
25

26

27                                                         -2-
                                      Complaint – DFEH No. 202107-14143912
28 Date Filed: July 12, 2021

5.     In 2015, Plaintiff and two other female security guards (Socorro Cuevas and Elaina Bernal) began to complain about pain and discomfort in their breasts resulting from being forced to wear male ballistic vests that had no room for female breasts. These complaints were made to site supervisor Defendant Veantea Burnside. CSI deployed a company representative to the site to take photos of Cuevas and her male ballistic vest.

6.     Also in 2015, males and females assigned to the site were forced to use the same locker room, with females being forced to change in front of males, as the security guards were required to report to, and leave, work in civilian attire only. Females were forced to change down to their underwear in front of male colleagues for several years.

7.     Eventually, the male vests issued to the female guards were recalled by CSI. Defendant Burnside told the female staff that their "employment status was uncertain," and that he "didn't want to buy vests that they couldn't use, as that would be a waste of money."

8.     In 2016, new vests were delivered, and Burnside issued the new vests to all armed guards. However, the vests were, again, all male vests and unsuitable for the female body. All females who tried the new vests agreed that they did not fit around their breasts. Female guards were forced to use these new, male vests which caused them significant pain and discomfort. The female guards would have to constantly reach into their vests to pull the Kevlar away from their breasts to help alleviate the pain and discomfort caused by wearing the men's ballistic vests.

9.     Plaintiff and the other similarly situated female armed guards made regular complaints both verbally and in writing. Supervisor Burnside gave the female guards what be purported to be a solution: to take the vests home and put them under a mattress in order to create a crease to allow their breasts to not be compressed. Plaintiff followed this instruction, but this did not work or help alleviate the pain.

10.    In February 2018, Plaintiff was promoted to Captain at the sight and given supervisory responsibilities.

11.    In April 2018, Plaintiff was on and off of light duty due to an occupational knee injury. While on light duty, Plaintiff was relieved to not have to wear the male ballistic vest.

12.    CSI represented to Plaintiff that they could not afford to buy new vests unless the customer, Peraton, paid for the vests. Carmen Cortinas, the security administrator for Peraton, was aware of the ongoing injuries to Plaintiff and the other similarly-situated females caused by the failure of Defendants to provide female ballistic vests.

13.    In April 2019, Plaintiff presented Defendants with a certification by her physician that Plaintiff needed to wear a female ballistic vest due to Plaintiff having developed painful, fluid-filled cysts in both breasts. Plaintiff transmitted this medical certification to CSI CEO Kristian Kluzinski, but Kluzinski did not respond despite Plaintiff following-up several times. Plaintiff then followed-up with Human Resources supervisor Robert Handel. Handel informed Plaintiff that he had been trying to reach Kluzinski about this issue, but had been similarly unsuccessful.

14.    During this time, Plaintiff was injured by Defendants, with painful cysts having been occupationally-caused in both breasts.

15.    On August 23, 2019, Plaintiff took time off from work due to a cumulative back injury. On or about this time, CEO Kluzinski relented and agreed to purchase female vests for Plaintiff and her female coworkers.

16.    In September 2019, Plaintiff was instructed to meet with a vendor to be sized for a vest: Greg McClung of Proforce Law Enforcement. Responding to an inquiry by Plaintiff,

*Complaint – DFEH No. 202107-14143912*

Date Filed: July 12, 2021

1  McClung denied that any ballistic vests were "universal" or "unisex," as had been
represented to Plaintiff and the other female armed guards by Defendants.

2  17.      In May 2020, Defendants finally issued female ballistic vests, after nearly five years
of continuous complaining by Plaintiff and the other female guards at the site.

3  18.      During the preceding five years, Plaintiff, as well as other similarly-situated female
armed guards were forced to endure severe, unrelenting pain while wearing the mandatory

4  male vests while on-duty.

5  19.      The use of the male vests by Plaintiff resulted in lasting injuries to her neck, back,
and breasts that would not have occurred but for Defendants failing to provide a female

6  ballistic vest to Plaintiff based solely upon financial motivations.

7  20.      Plaintiff is a grandmother who helps support her entire family, and was forced to
endure the pain because she had recently bought a house close to the work site, and could

8  not financially withstand the potential loss of her employment with CSI.

9  21.      On or about this time, CSI conducted an internal inquiry based upon complaints that
Defendant Burnside had been sexually harassing two of his subordinates: Elaina Bernal and
Jazmin Morfin.  CSI later terminated Burnside.

10  22.      On  or about August 23, 2019, Plaintiff had to take time off from work due to the
occupational injuries caused by Defendants.  Plaintiff provided this medical certification to

11  CSI, with this medical certification containing reasonable accommodations to permit Plaintiff
to return to work and perform her essential job functions.  These reasonable

12  accommodations requested by Plaintiff and her physician were to avoid kneeling, squatting,
or excessive standing.

13  23.      Plaintiff sought to return to work with reasonable accommodations whose necessity
was attested to by her physician.

14  24.      CSI refused to provide any of these reasonable accommodations to Plaintiff based
upon her physician's advice, and instead terminated Plaintiff on January 1, 2020 for

15  purported job abandonment.

16  25.      Plaintiff did not abandon her job, rather, she had provided her employer with a list of
reasonable accommodations that she would need in order to return to work on light duty.
Instead, CSI terminated Plaintiff based upon wrongful animus in violation of California law.

17

18

19

20

21

22

23

24

25

26

27                                              -4-

28  Date Filed: July 12, 2021

1    VERIFICATION

2    I, **Alan Romero**, am the **Attorney** in the above-entitled complaint.  I have read the
3    foregoing complaint and know the contents thereof.  The matters alleged are based
     on information and belief, which I believe to be true.

4
5    On July 12, 2021, I declare under penalty of perjury under the laws of the State of
     California that the foregoing is true and correct.

6                                                                        **Pasadena, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         -5-
                              *Complaint – DFEH No. 202107-14143912*

28
     Date Filed: July 12, 2021